## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Respondent/Plaintiff, | ) | |
| vs. | ) | No. 3:02-CR-0245-H(03) (BH) |
| | ) | No. 3:03-CV-2122-H (BH) |
| MICHELLE LYNN DODD, | ) | ECF |
| ID # 29466-177, | ) | Referred to the U.S. Magistrate Judge |
| Movant/Defendant. | ) | |

### FINDINGS, CONCLUSIONS, AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b), and an Order of the Court in implementation thereof, subject cause has previously been referred to the United States Magistrate Judge. The findings, conclusions, and recommendation of the Magistrate Judge are as follows:

## I.  BACKGROUND

### A.  Nature of the Case

Movant, a current inmate in the federal prison system, brings this Motion to Vacate, Set Aside, or Correct Sentence pursuant to the provisions of 28 U.S.C. § 2255 to challenge her federal conviction and sentence in Cause No. 3:02-CR-0245-H.  The respondent is the United States of America (government).

### B.  Factual and Procedural History

On August 20, 2002, the government indicted movant for conspiracy to manufacture and possess with intent to distribute more than 500 grams of a mixture or substance containing methamphetamine (Count 1), possession of a firearm during a drug trafficking crime (Count 3), and possession with intent to distribute methamphetamine (Count 4).[1]  (Indictment at 1-4, 6, and 7.)  Movant

---

[1] Movant was not named in the other counts of the indictment.

entered into an agreement with the government whereby she would plead guilty to Count 1, and she signed a factual resume in which she admitted facts sufficient to support her plea to that count. (*See generally* Plea Agreement; Factual Resume.)

On October 11, 2002, movant appeared before the Court for rearraignment. (Tr. Rearraignment Proceedings at 1.) Movant indicated that she understood that she was charged "with conspiracy to manufacture and possess a controlled substance." (*Id.* at 2.) She indicated that she was thirty years old and possessed an eleventh grade education. (*Id.* at 4.) Her attorney indicated that he went over the plea agreement with movant and that she appeared to understand it. (*Id.* at 5.) Movant did not indicate any lack of understanding and specifically indicated that she had no questions about the plea agreement. (*See id.*)

At the request of the Court, the prosecutor summarized the plea agreement on the record. (*Id.* at 5-8.) Through such summary, the prosecutor indicated that movant understood her Constitutional rights to a jury trial, to confront and cross-examine witnesses, and to call witnesses in her defense and agreed to waive such rights and plead guilty to Count 1. (*Id.* at 6.) The prosecutor informed movant of the minimum and maximum statutory sentence that she could receive upon her plea, the maximum fine that could result from her plea, the length of the mandatory term of supervised release associated with Count 1, the imposition of a $100 mandatory special assessment, and the applicability of the federal sentencing guidelines. (*Id.*) She specifically informed movant that "there are no promises with regard to what sentence the Court will impose." (*Id.*) She indicated that "[t]he government will advise the Court through the Probation Department of the extent of [movant's] cooperation . . . [a]nd if her cooperation rises to the level of substantial assistance, the government may in its discretion file a motion for downward departure pursuant to Section 5K1.1

of the Sentencing Guidelines." (*Id.* at 7.) The prosecutor further informed movant that the plea agreement provided that movant "agree[d] to waive her right to appeal except in certain limited circumstances, including punishment in excess of the statutory maximum, punishment if it is an upward departure from the guideline range, mathematical errors in the guideline calculation, and a claim of ineffective assistance of counsel." (*Id.*) The prosecutor indicated that movant "agree[d] that the factual resume is true and correct and will be submitted to the Court as evidence" and that movant was "pleading guilty freely and voluntarily and not [because] of force, threats, or promises apart from those set forth in th[e] plea agreement." (*Id.* at 7-8.) The prosecutor reiterated that "there are no representations, no promises from anyone as to what sentence the Court will impose." (*Id.* at 8.) The prosecutor lastly indicated that the plea agreement is the "complete statement of the agreement between the parties." (*Id.*)

Upon completion of the summary of the plea agreement, the parties clarified that, because movant was only pleading guilty to Count 1, the other counts against her would be dismissed. (*Id.*) The prosecutor also indicated that the possibility of a § 5K1.1 departure could possibly include a motion under 18 U.S.C. § 3553.[2] (*Id.* at 8-9.) Defense counsel indicated that the summary was a substantially correct rendition of the terms of the plea agreement[3] and that he had discussed with

---

[2] Section 3553(e) grants the Court "authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance" upon motion from the government. Section 3553(f) provides that for drug offenses the Court may sentence a defendant below a statutory minimum term of imprisonment upon a governmental recommendation that the defendant meets the five criteria for such reduced sentence.

[3] A comparison of the summary and the actual plea agreement supports finding that the summary is a substantially correct rendition. (*Compare* Tr. Rearraignment Proceedings at 6-8 *with* Plea Agreement at 1-7.) Although not summarized by the prosecutor, the agreement also specifically indicates that "[t]he government will not further prosecute the defendant for any conduct prior to the date of this Plea Agreement that was part of the same course of criminal conduct as matters described in the Factual Resume." (Plea Agreement at 4.) The parties corrected the failure to include this provision in the summary by clarifying that the government would dismiss the other counts against movant. (Tr. Rearraignment Proceedings at 8.)

movant the minimum and maximum statutory penalties, the waiver of her right to appeal except in limited circumstances, and the applicability of the sentencing guidelines. (*Id.* at 9.) Movant agreed that her attorney discussed such matters with her and indicated that she wanted the Court to accept the plea agreement. (*Id.*) At no time during the plea hearing did movant express any misunderstanding or confusion regarding any provision of the plea agreement. (*See id.* at 1-13.) To the contrary, she specifically indicated that she had no questions about the plea agreement. (*Id.* at 5.)

On March 3, 2003, the government filed a motion for downward departure pursuant to USSG § 5K1.1 based on movant's substantial assistance to the government in its prosecution of other individuals. (*See* Mot. Downward Departure at 1-5.) The government indicated therein that movant had admitted her involvement in the drug conspiracy and provided information that enabled the government to determine the relevant drug quantities. (*Id.* at 2.)

On March 6, 2003, the Court held a sentencing hearing during which it overruled movant's objections to the pre-sentence report and granted the government's motion for downward departure. (*See* Tr. Sentencing at 1-6.) The Court departed down an additional two levels, resulting in a guideline range of 121 to 151 months, and sentenced movant to 121 months imprisonment. (*Id.* at 3-4.) Defense counsel asked the Court to further depart downward by two more levels, which would result in a guideline range of 97 to 121 months. (*Id.* at 4-5.) Defense counsel specifically informed the Court that the government indicated a willingness to move for a departure below the statutory mandatory minimum sentence of ten years. (*Id.* at 5.) The Court recognized the ten-year mandatory minimum sentence and its departure to a range of 121 to 151 months but specifically expressed its unwillingness to further depart downward. (*Id.* at 6.)

Movant did not appeal her conviction or sentence.  (*See* Mot. Vacate ¶ 8.)  Instead, she filed

the instant *pro se* motion to vacate pursuant to 28 U.S.C. § 2255 in September 2003.  (*Id.* at 1.)  The

government thereafter filed its response.  (*See* Resp. at 1.)  Movant retained counsel and filed a reply

brief and a motion for hearing.  (*See* Reply; Mot. for Hearing.)

## C.  Substantive Claims

Movant seeks to vacate, set aside, or correct her conviction and sentence because (1) she

has not received a promised sentence reduction pursuant to Fed. R. Crim. P. 35(b); (2) the govern-

ment engaged in prosecutorial misconduct by not honoring promises to her; and (3) she received

ineffective assistance of counsel.[4]

## D.  Procedural Issues

The government argues that movant has waived the right to raise Claims 1 and 2 in the

instant motion to vacate, and that alternatively, such claims are procedurally barred.  (Resp. at 1-6.)

Movant argues that such claims are not procedurally barred and she did not voluntarily and know-

ingly waive her right to raise these claims in the instant motion.  (Reply at 2-9.)

## II.  SCOPE OF RELIEF AVAILABLE UNDER § 2255

"Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for

a narrow range of injuries that could not have been raised on direct appeal and would, if condoned,

result in a complete miscarriage of justice."  *United States v. Gaudet*, 81 F.3d 585, 589 (5th Cir. 1996)

(citations and internal quotation marks omitted).  It is well established that "a collateral challenge

may not do service for an appeal."  *United States v. Shaid*, 937 F.2d 228, 231 (5th Cir. 1991) (*en banc*)

---

[4]  This characterization of movant's claims comes from the reply brief filed by her retained attorney.  The Court notes that the government's response to the motion to vacate characterized the claims in this same manner and order.

(quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)).  Defendants may only collaterally attack their convictions on grounds of error omitted from their direct appeals upon showing "cause" for the omission and "actual prejudice" resulting from the asserted error.  *Id.* at 232.  Even then, any new assertion of error is limited to "issues of constitutional or jurisdictional magnitude."  *Id.*  The cause and prejudice test applies even to allegations of fundamental constitutional error.  *Id.*  The only exception to the application of the test is when a movant can establish a fundamental miscarriage of justice, *i.e.*, that he or she is actually innocent of the crime convicted.  *Id.*  Furthermore, "there is no procedural default for failure to raise an ineffective-assistance claim on direct appeal" because "requiring a criminal defendant to bring [such] claims on direct appeal does not promote the[] objectives" of the procedural default doctrine, "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  *Massaro v. United States*, 538 U.S. 500, 503-04 (2003).  In addition, a showing of ineffective assistance of counsel satisfies the cause and prejudice standard.  *See United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000).

In this case, movant did not appeal her conviction or sentence.  She seeks to overcome that procedural default by asserting ineffective assistance of counsel.  (*See* Reply at 4.)  She also argues that to apply the procedural bar would result in a miscarriage of justice because she is actually innocent of the firearm enhancement used to increase her sentence.  (*Id.*)

Movant's latter argument misses the mark.  "Actual innocence means 'factual innocence, and not mere legal insufficiency.'  To prove actual innocence, the [movant] 'must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted h[er].'"  *United States v. Jones*, 172 F.3d 381, 384 (5th Cir. 1999).  Movant must show, "as a factual matter, that [s]he did not commit the crime of conviction."  *Fairman v. Anderson*, 188 F.3d 635, 644

(5th Cir. 1999) (quoting *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995)).  Movant has not made this showing.  She has not demonstrated that it is more likely than not that no reasonable juror would have convicted her in light of the evidence that could have been presented against her.  Her claim that she is actually innocent of an enhancement to her sentence does not suffice.  Thus, the miscarriage-of-justice exception to the procedural bar doctrine does not save movant from her procedural default.

Movant, however, also specifically attempts to show cause and prejudice by assigning error to her attorney.  (Reply at 4.)  She also challenges the validity of her guilty plea and accompanying waivers.  (*Id.* at 2-9.)  Because the validity of her plea and its accompanying waivers impact whether movant has waived her right to pursue certain claims in this action, the Court considers the voluntariness of the plea at the outset.

### III.  VOLUNTARINESS OF GUILTY PLEA AND RELATED WAIVERS

Movant claims that her guilty plea was involuntary because she did not understand that she was waiving her Constitutionally guaranteed right to appeal or collaterally attack her sentence.  (Reply at 2.)  She further argues that she agreed to plead guilty and waive her right to appeal or collaterally attack her sentence only after the government agreed to dismiss the firearm allegations, and because she "believed the gun charge would be dismissed completely from her record and not used at all in sentencing, her waiver was not knowing and voluntary."  (*Id.* at 8.)  She further asserts that she entered her plea involuntarily because her attorney failed to inform her that his failure to obtain the government's promises in writing put her at risk for a sentencing enhancement for possession of a firearm and deprivation of a sentence reduction under Fed. R. Crim. P. 35(b).  (*Id.* at 8-9.)

A plea of guilty waives a number of constitutional rights. *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Joseph v. Butler*, 838 F.2d 786, 789 (5th Cir. 1988). Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely conse-quences." *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'" ) (quoting *Brady*, 397 U.S. at 748). A plea induced by threats, improper promises, deception, or misrepresentation is not voluntary. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him [or her], the first and most universally recognized requirement of due process." *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)). In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and substance of the charges against h[er], and not necessarily whether [s]he understood their technical legal effect." *Taylor*, 933 F.2d at 329.

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that [s]he understands the law of h[er] crime in relation to the facts of h[er] case, as well

as h[er] rights as a criminal defendant." *United States v. Vonn*, 535 U.S. 55, 62 (2002).[5]  "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Vonn*, 535 U.S. at 78 (Stevens, J., concurring).  A determination of whether a defendant understands the consequences of her guilty plea, including the waiver of her right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his or her plea.  *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea").  Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophy-lactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

Nevertheless, "[t]he voluntariness of a plea is determined by 'considering all of the relevant circumstances surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).

> When examining the totality of the circumstances, a reviewing court should "con-
> sider the complexity of the charge, the defendant's level of intelligence, age and edu-
> cation, whether the defendant was represented by counsel, the judge's inquiry during
> the plea hearing and the defendant's statements, as well as the evidence proffered by
> the government."

---

[5]  Rule 11 has undergone various changes over the years.  Fed. R. Civ. P. 11 (showing various amendments including amendments in 1999 and 2002); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *Vonn*, 535 U.S. at 62 (recognizing the evolution of the rule over the past three decades).  As it existed when movant pled guilty in October 2002, Rule 11 required the courts to "inform the defendant of, and determine that the defendant underst[ood] . . . the terms of any provision in a plea agreement waiving the right to appeal or to collaterally attack the sentence."  *See* Fed. R. Crim. P. 11(c)(6) (now re-worded and set forth in Fed. R. Crim. P. 11(b)(1)(N)).

*United States v. Cross*, 57 F.3d 588, 591 (7th Cir. 1995) (citations omitted).  Courts considering challenges to guilty plea proceedings "have focused on three core concerns: absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 416 (5th Cir. 2002).  "If a defendant understands the charges against h[er], understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (*en banc*), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

With these principles in mind, the Court examines the voluntariness of movant's plea and waivers.

## A. <u>Claimed Lack of Understanding</u>

Movant urges the Court to find her plea involuntary because she claims that she did not understand that she was waiving her Constitutionally guaranteed right to appeal or collaterally challenge her sentence.

A review of the record as a whole reflects that movant, a thirty-year-old woman with an eleventh grade education, faced a simple charge that she conspired to manufacture and possess with intent to distribute more than 500 grams of methamphetamine.  The record reflects that movant was informed about and understood the nature of the charge against her.  She knew the maximum prison term and fine which she could face for the charged offense.  The plea agreement indicates that movant understood that she was waiving certain Constitutional rights by pleading guilty.  The waiver

provision of the plea agreement explicitly and unambiguously waives her right to directly appeal or collaterally challenge her conviction and sentence pursuant to 28 U.S.C. § 2255 except in limited circumstances. In addition, the transcript of the Re-arraignment proceedings clearly shows that movant was informed of such waiver. When her attorney indicated that she appeared to understand the terms of the plea agreement, she voiced no lack of understanding. When the Court admonished her in accordance with Rule 11, she specifically indicated that she had no questions about the agreement. The totality of the circumstances shows that, at the time of the rearraignment proceedings and the entry of her plea, movant understood that she was waiving her appellate rights as set forth in the plea agreement. She entered such plea with sufficient knowledge regarding the waiver of her appellate rights, including her right to present claims in a collateral attack pursuant to 28 U.S.C. § 2255.

Moreover, prisoners who challenge their guilty pleas on collateral review must overcome various presumptions related to court documents and prior testimony.

> [R]epresentations of the defendant, h[er] lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Courts also presume the regularity of court documents and accord them "great weight." *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v.*

*Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").  Movant has not overcome these presumptions.

For these reasons, the alleged misunderstanding presents no basis to find that movant entered her plea involuntarily.

## B. Claim of Unfulfilled Promises

Movant also claims that the government's failure to fulfill promises to dismiss the gun charge for purposes of enhancement and file a motion for departure under Fed. R. Crim. P. 35(b) makes her plea involuntary.  She argues that, although such promises do not appear in the written plea agreement, the government retained the duty to fulfill the promises and that the failure to do so renders her plea involuntary.

A plea may be rendered involuntary due to an unfulfilled promise.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  *Santobello v. New York*, 404 U.S. 257, 262 (1971).  Nevertheless, when an alleged unfulfilled promise does not appear in the written plea agreement and such promise is inconsistent with representations made in open court, the defendant faces a heavy burden to obtain relief under 28 U.S.C. § 2255 on a claimed involuntary plea.  *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (relying on the presumption in *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977) that "'[s]olemn declarations in open court carry a strong presumption of verity,' forming a 'formidable barrier in any subsequent collateral proceedings'").  *See also United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (presumption of regularity of court documents and the great

weight accorded to them by the courts); *Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (same); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (same).

In this case, movant concedes that the alleged unfulfilled promises do not appear in the written plea agreement. Thus, for movant to obtain relief under § 2255 "on the basis of alleged promises" that are inconsistent with representations made in open court at the time of the plea or with statements made in a signed court document, she must "prov[e] (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise." *See Cervantes*, 132 F.3d at 1110. Furthermore, only an unfulfilled promise made to the accused by the court, the prosecutor, or defense counsel may render a plea involuntary. *See Brady v. United States*, 397 U.S. 742, 755 (1970); *Amaya*, 111 F.3d at 389.

*1. Gun Charge*

Movant contends that the government breached its promise to dismiss the gun charge for purposes of enhancement. However, she fails to sufficiently identify such promise so as to render her plea involuntary and obtain relief under § 2255. Movant nowhere specifically sets forth the exact terms of such a promise, the precise circumstances of such a promise, or the precise identity of any eyewitness to such a promise as required by *Cervantes*. Consequently, such an unfulfilled promise provides no basis to render her plea involuntary.

Movant, furthermore, states that it was her understanding that the dismissed gun charge would not be used to enhance her sentence. (*See* Reply at 3 (stating that because she "believed" the charge would not be used at sentencing, her waiver was not knowing and voluntary")).) A "defendant's 'understanding' . . . is not a promise or a plea bargain," and thus provides no basis for

a claim that the government breached its plea bargain or failed to fulfill a promise. *See Bonvillain v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986).

    *2. Rule 35 Motion*

    Movant also contends that the government, through an agent of the Drug Enforcement Agency (DEA), promised to file a motion under Fed. R. Crim. P. 35(b) for a reduced sentence. Notwithstanding movant's failure to show that the promise of a DEA agent suffices to render a plea involuntary under *Brady*, 397 U.S. at 755, movant has still not met the requirements of *Cervantes*. She has not shown the precise identity of an eyewitness to the promise. *See Cervantes*, 132 F.3d at 1110. In the absence of such an eyewitness, movant cannot show that her plea was rendered involuntary by such unfulfilled promise. *See id.*

    Movant argues that under *Bischel v. United States*, 32 F.3d 259 (7th Cir. 1994) the Court should find that she did not voluntarily waive her right to appeal because she relied on the promise that she would receive a Rule 35 motion. (Reply at 3.) Nothing in *Bischel*, however, removes the requirement that movant must satisfy the *Cervantes* requirements before the Court will consider her plea involuntary based upon an alleged unfulfilled promise. In fact, *Bischel* recognizes that federal district courts properly dismiss § 2255 actions when the movant "fail[s] to present any evidence of a government promise to file a Rule 35(b) motion to further reduce his [or her] sentence." 32 F.3d at 264. As recognized in *Bischel*, "[a] mere allegation of an 'understanding' or 'promise' without some documentation or statement in the court record is insufficient to merit an evidentiary hearing much less a Rule 35 hearing." *Id.* Mere allegations of an unkept promise are insufficient to invalidate a guilty plea, its accompanying waivers, or obtain relief under § 2255. *See Cervantes*, 132 F.3d at 1110.

For the foregoing reasons, the Court finds no unfulfilled promise that renders movant's plea or accompanying waivers involuntary or entitles her to relief in this § 2255 action.

## C. Ineffective Assistance of Counsel

Movant lastly claims that she involuntarily entered her plea because her attorney failed to inform her that his failure to reduce the previously discussed governmental promises to writing could risk an increased sentence and deprive her of a sentence reduction under Fed. R. Crim. P. 35(b). (Reply at 8-9.)  She argues that she would not have pled guilty had she been informed of the potential consequences of her attorney's failure to include all governmental promises in the written plea agreement.  (*Id.*)

A guilty plea is "open to attack on the ground that counsel did not provide the defendant with 'reasonably competent advice.'" *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980) (quoting *McMann v. Richardson*, 397 U.S. 759, 770-771 (1970)).  To successfully state a claim of ineffective assistance of counsel, the prisoner must demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his or her defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The *Strickland* test applies when a prisoner alleges she was denied effective assistance of counsel in the context of a guilty plea.  *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985).  "[I]n a guilty plea scenario, a [prisoner] must prove not only that h[er] attorney actually erred, but also that [s]he would not have pled guilty but for the error."  *See Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir. 1994).

A failure to establish either prong of the *Strickland* test requires a finding that counsel's performance was constitutionally effective.  *See* 466 U.S. at 696.  The Court may address the prongs in any order.  *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).  To determine whether counsel's per-

formance is constitutionally deficient courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689.  Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

When a prisoner challenges her plea based on ineffective assistance of counsel, the "prejudice" requirement "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 58.  To satisfy this requirement in the plea context, the prisoner "must show that there is a reasonable probability that, but for counsel's errors, [s]he would not have pleaded guilty and would have insisted on going to trial." *Id.*  Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel.  *Strickland*, 466 U.S. at 695-96.

Notwithstanding movant's failure to establish the existence of a witness to the alleged promises, the Court assumes for purposes of these findings only that such promises were made, and that defense counsel rendered deficient performance when he failed to adequately apprise movant of potential consequences of his failure to set forth all governmental promises in the plea agreement. Such assumption, however, does not demonstrate ineffective assistance of counsel.  In this instance, movant has not shown a reasonable probability that, but for the deficiency of counsel, she would have insisted on going to trial on a plea of not guilty.

Prior to her plea, movant faced a sentencing range of 235 to 293 months for Count 1, with exposure to a **mandatory additional** five years imprisonment for the gun charge.  By accepting responsibility and pleading guilty, movant reduced her exposure on Count 1 to 210 to 262 months imprisonment and eliminated all exposure to the mandatory five years imprisonment for the gun

16

charge. By pleading guilty, she also obtained the possibility that the government would recommend a lower sentence under USSG § 5K1.1 (which the government ultimately did recommend). In addition, by pleading guilty, movant reduced her statutory minimum sentence on the charges against her from fifteen to ten years. Such reductions of themselves provide an incentive to plead guilty.

While the extent of sentencing reductions gained by pleading guilty is a relevant factor in a decision to plead guilty, another universal consideration is the quality of evidence that the government possesses to present to the trier of fact should a defendant choose to proceed to trial. In this instance, the government possessed high quality evidence to convict movant. Upon her arrest, movant made several incriminating statements to law enforcement personnel. In light of such incriminating statements, her chances of success at trial on Count 1 were greatly reduced, if not eliminated. Such decreased chances of success at trial provides strong incentive to plead guilty and obtain some leniency at sentencing.

In view of the decreased chances of success at trial and the obvious sentencing reductions obtained by pleading guilty, the Court finds no reasonable probability that movant would have insisted on pleading not guilty and proceeding to trial merely because her attorney failed to inform her of potential consequences of his failure to include all governmental promises in the written plea agreement. Knowledge that the Court would enhance her sentence for possession of a firearm creates no reasonable probability that movant would have insisted on pleading not guilty and proceeded to trial. Although movant's sentencing range was negatively altered when the Court enhanced her sentence for possession of a firearm, such altered range does not necessarily change the sentence imposed. The government recommended that movant's offense level be reduced by three levels based upon her substantial assistance in obtaining other convictions. This reduced her

17

exposure on Count 1 to 151 to 188 months imprisonment.  The Court granted the reduction as well as an additional two-level reduction and sentenced movant to 121 months.  This sentence lies within the range of appropriate sentences even without the two-level enhancement for possession of a firearm.  Further, knowledge that she would receive no Rule 35(b) reduction creates no reasonable probability that movant would have insisted on pleading not guilty and proceeded to trial.  Movant would have gained the same substantial benefits from her guilty plea even had she known that she would not receive a Rule 35 reduction in sentence.  Such benefits coupled with the evidence against her provide overwhelming incentive to plead guilty notwithstanding the lack of a Rule 35(b) reduction.

The plea agreement, furthermore, specifically informed movant that no one had promised her that the Court would impose a specific punishment or apply a specific range of incarceration.  When she pled guilty she had no legitimate expectation of a particular sentence or § 5K1.1 recommendation by the government.  The changed sentencing range resulting from the enhancement creates no reasonable probability that movant would have insisted on proceeding to trial had she known that the Court would enhance her sentence for possession of a firearm.  In addition, a full awareness of every consequence of his or her plea is not required for a defendant's plea to be considered valid.

For the foregoing reasons, the Court finds no ineffective assistance of counsel that rendered movant's plea or accompanying waivers involuntary.

## D.  Conclusion

In view of the totality of the circumstances, the Court finds that movant did not misunderstand the waiver provision of her plea agreement and such alleged misunderstanding thus did not

18

render her plea involuntary.  The Court further finds that no unfulfilled promise or ineffective assistance of counsel rendered her plea involuntary.

Because movant voluntarily pled guilty, the Court further finds that she voluntarily waived her right to appeal as set forth in her plea agreement.  It also finds that she was informed of such waiver.  Not only did the plea agreement inform her of the waiver, the prosecutor specifically summarized that waiver at her plea hearing.  By her informed and voluntary waiver of post-conviction relief, movant is precluded from pursuing claims in this § 2255 action except for those claims that she specifically reserved for purposes of appeal and collateral attacks.  *See United States v. McKinney*, 406 F.3d 744, 746 & n.2 (5th Cir. 2005) (holding that "[a] defendant may waive his statutory right to appeal if the waiver is knowing and voluntary"); *United States v. Baymon*, 312 F.3d 725, 729 (5th Cir. 2002) (same); *United States v. White*, 307 F.3d 336, 343-44 (5th Cir. 2002); *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) (per curiam); *United States v. Melancon*, 972 F.2d 566, 567-68 (5th Cir. 1992).

In this instance, movant reserved the right to appeal or collaterally challenge (a) any sentence exceeding the statutory maximum punishment, (b) any upward departure from the guideline range deemed applicable by the district court, (c) any arithmetic error at sentencing, and (d) ineffective assistance of counsel.  (Plea Agreement at 5.)  The claims raised in this action do not fall within reserved categories (a), (b), or (c).  Consequently, her informed and voluntary waiver precludes movant from pursing any claim other than her claims of ineffective assistance of counsel. Because of such waiver, she is entitled to no relief under § 2255 for her claims of prosecutorial

misconduct.[6]  The Court thus proceeds to movant's claims of ineffective assistance of counsel which are unrelated to the voluntariness of her plea.

## IV.  INEFFECTIVE ASSISTANCE DURING SENTENCING

Movant claims that her trial attorney rendered ineffective assistance at sentencing that resulted in a harsher sentence.  (Reply at 8-9.)  She claims that her attorney should have ensured that governmental promises were included in the written plea agreement and that the failure to do so resulted in a two-level enhancement under USSG § 2D1.1(b)(1) and no sentence reduction under Fed. R. Crim. P. 35(b).  (*Id.*)  She asserts that her attorney failed to "make sure" that the two-level enhancement for weapon possession was removed "due to the government dismissing the weapons charge."  (Mot. Vacate at 5.)  These claims of ineffective assistance are merely a different twist to her claim of ineffective assistance of counsel that rendered her plea involuntary.

As previously noted, to successfully state a claim of ineffective assistance of counsel at sentencing, movant must demonstrate (1) deficient attorney performance and (2) that the deficient performance resulted in prejudice to her.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In the context of ineffective assistance of counsel at sentencing, prejudice is established if the movant demonstrates that her sentence was increased by the deficient performance of her attorney. *Glover v. United States*, 531 U.S. 198, 200-04 (2001).  In other words, the movant must show that counsel's deficiencies created a reasonable probability that her sentence would have been less harsh. *See id.* at 200.

---

[6]  Such waiver also means that movant is entitled to no relief under § 2255 for any claim that the Court erred except when the error fits within the three specific reserved issues set forth in the plea agreement.  Such waiver precludes claims under *Blakely* and *Booker* in addition to other claims that do not fit within the three specified sentencing errors.

In this instance, movant has not shown that any deficiency of counsel created a reasonable probability that her sentence would have been less harsh. The Court sentenced her to 121 months imprisonment – a sentence barely above the ten-year statutory minimum sentence for her offense – after it granted an additional two-level reduction. This essentially negated the firearm enhancement. Even if the Court had not imposed a two-level enhancement for possession of a gun, the 121-month sentence would still be within the resulting guideline range of 97 to 121 months. Further, the Court specifically indicated at sentencing that it was unwilling to impose a lesser sentence. Consequently, the Court finds no reasonable probability that it would have sentenced movant more leniently in the absence of the alleged deficiencies of counsel.

With respect to deficiencies related to the Rule 35(b) motion, the Court notes that that rule merely provides discretionary authority to reduce a sentence on the motion of the government. The rule creates no mandatory reduction even if the government moves for a reduction. In this instance, nothing of record reveals any inclination by the Court that it would grant such a reduction. In fact, to the contrary, the Court specifically indicated at sentencing that it was unwilling to further reduce movant's sentence. It declined to consider a sentence below the statutory minimum. Thus, even had defense counsel taken steps to assure that the government would file a Rule 35(b) motion the Court finds no reasonable probability that it would have granted such motion.

For all of these reasons, the Court finds no reasonable probability that movant would have received a less harsh sentence in the absence of the alleged deficiencies of counsel at sentencing.

## V.  EVIDENTIARY HEARING

Movant seeks a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154(1978).  (*See* Mot. Hearing at 1.)  In the context of a challenge to "the veracity of a sworn statement used by police to procure a search warrant", the Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Id.* at 155-56.  *Franks* does not dictate a hearing in this case because of the differing factual situations at issue.  This case does not involve the veracity of any sworn statement used by law enforcement personnel to procure a search warrant.  In addition, movant has not made a substantial showing of any false statement.  The Court thus denies movant's motion for hearing pursuant to *Franks*.

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case.  The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary.  In this instance, the matters reviewed by the Court conclusively show that movant is entitled to no relief.

With respect to movant's claims that unfulfilled, governmental promises rendered her plea involuntary, the Court specifically notes that, not only does the alleged unfulfilled promises not render movant's plea involuntary, but movant has provided insufficient support to warrant an evidentiary hearing on the claimed unfulfilled promises.  Unless "the defendant produces independent indicia of the likely merit of her allegations, typically in the form of one or more affidavits from

22

reliable third parties, she is [not] entitled to an evidentiary hearing on the issue." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). When "the defendant's showing is inconsistent with the bulk of her conduct or otherwise fails to meet her burden of proof in the light of other evidence in the record, an evidentiary hearing is unnecessary." *Id.* Movant has provided no affidavit from any third party. She has provided no independent indicia that she entered her plea involuntarily due to oral promises that were not fulfilled by the government. She signed a plea agreement which specifically indicates that her decision to plead was not influenced by promises outside of the plea agreement and that the plea agreement constitutes the entire agreement between her and the government. Her testimony at re-arraignment indicates no lack of understanding of that agreement. The bulk of her conduct is consistent with finding her plea voluntary and not induced by oral promises by the government. For these reasons, the claimed unfulfilled promises does not require an evidentiary hearing.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned Magistrate Judge **RECOMMENDS** that the Court **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED this 30th day of November, 2005.**


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a copy of these findings, conclusions, and recommendation on all parties by mailing a copy to each of them.  Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must file and serve written objections within ten days after being served with a copy.  A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made.  The District Court need not consider frivolous, conclusory or general objections.  Failure to file written objections to the proposed findings, conclusions, and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE